UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CYNTHIA GRAHAM,

                                        Plaintiff,

        -v-                                              7:10-CV-756

WATERTOWN CITY SCHOOL DISTRICT
and TERRY N. FRALICK, Superintendent
of Watertown City School District, in his
official and individual capacities,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

CYNTHIA GRAHAM
Plaintiff, Pro Se
19963 NYS Route 12F
Watertown, NY 13601

OFFICE OF FRANK W. MILLER              FRANK W. MILLER, ESQ.
Attorneys for the Defendants           J. RYAN HATCH, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Cynthia Graham ("plaintiff" or "Graham"), proceeding pro se, commenced

this action on June 28, 2010, pursuant to 42 U.S.C. § 1983.  In her amended complaint[1]

plaintiff asserts ten federal causes of action for, inter alia, discrimination and retaliation in

---

        [1]  The Watertown City School District Board of Education was included in the title as a separate
defendant.  Since it is merely the governing body of the defendant Watertown City School District, they will be
consolidated for purposes of this action.

violation of the Fourteenth Amendment, the Age Discrimination in Employment Act ("ADEA"), the Americans With Disabilities Act ("ADA"), and the Rehabilitation Act.[2]  Plaintiff also brings four pendent state law claims and seeks declaratory, monetary, and injunctive relief.  On December 9, 2010, defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Plaintiff opposes the motion, which was taken on submit.

## II.  FACTUAL BACKGROUND

The following facts, taken from plaintiff's 89-page amended complaint, are accepted as true for purposes of this motion.

Graham taught music in the Watertown City School District (the "District") for 40 years, during which she received satisfactory evaluations and earned tenure.  Due to injuries sustained while working in the District in 1998 and 2002, plaintiff suffers from chronic pain and limited mobility in her neck, right shoulder, and right arm.  This condition was determined to be a permanent disability by the Workers' Compensation Board and is exacerbated by cold and damp weather, lifting, and overuse.  In 1998 plaintiff requested, and was granted, accommodating schedule changes and a single-building teaching assignment at the Ohio Elementary School ("Ohio").[3]  Due to building renovations during the 2006–2007 school year, however, Graham had to travel between Ohio and another school to teach on a daily basis.

---

[2] Individual defendants can only be sued under the ADA and Rehabilitation Act in their official capacities for prospective injunctive relief.  Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).  Therefore, these claims can only be brought against Superintendent Fralick in his official capacity and for prospective injunctive relief.  However, because this would ultimately hold the District liable, the ADA and Rehabilitation Act claims against Fralick will be dismissed as redundant.  See Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (Munson, S.J.).

[3] This request was granted by Superintendent Fralick's predecessor.

This constant travel aggravated her physical ailments and prevented her from taking needed rest breaks during the day.

In early July 2007 Graham sent a written request through her attorney, accompanied by a letter from her doctor, asking to be assigned to a single school in the upcoming 2007–2008 school year as an accommodation for her physical disability. Instead, defendant Superintendent Fralick ("Fralick") assigned plaintiff to again teach classes in two different buildings. Further, plaintiff was scheduled two more hours of teaching per day than other District music teachers, some of whom had unassigned teaching time during the day.[4] On August 22, 2007, plaintiff phoned the president of the Board of Education (the "Board"), Peter Monaco ("Monaco"), who called her a "troublemaker" and accused her of plotting to sue the District. Plaintiff mailed the Board two letters in response to Monaco's comments. In one letter plaintiff requested to have her teaching assignment switched with one of the music teachers who taught full-time at one building and, therefore, did not travel during the day.

On August 28, 2007, the District's attorney, Frank Miller, sent Graham's attorney a letter in response to her requested accommodation. Miller acknowledged that the District had an obligation to accommodate plaintiff but stated that her request to teach in only one school could not be granted because it would disrupt building assignments on the eve of the start of the school year. Miller noted that plaintiff could limit her classroom movement and "work activities accordingly provided that she is able to meet the requirements of the state syllabus and the school curriculum." Miller further explained that plaintiff could take rest periods as needed, request audio/visual aids, and use reserved parking spaces.

---

[4] At all pertinent times, Graham was the only District music teacher with a physical disability.

Plaintiff sent another letter to the Board on September 4, 2007.  On September 13, 2007, she received a written response from Monaco advising that the District had retained an attorney to determine its legal rights and obligations.  This letter was placed in plaintiff's personnel file without her knowledge or signature.  In a September 17, 2007, letter to the Board, plaintiff claimed that placing the September 13 letter in her file without her consent was a violation of the teachers' collective bargaining agreement.  In response, Fralick agreed to remove the letter from plaintiff's personnel file.

On June 16, 2008, Graham again requested a one-building assignment for the upcoming school year.  Fralick granted this request, and plaintiff was assigned to Ohio full-time for the 2008–2009 school year.  Additionally, plaintiff was provided with a class schedule that incorporated sufficient rest periods.  However, just prior to the inception of the school year, the length of each class at Ohio was extended from 30 minutes to 35 minutes.  Graham protested this increase, which stripped her of needed rest periods.  Plaintiff's request to have the time restored to 30 minutes was denied at a subsequent meeting, at which other teachers supported the 35-minute class length and openly insulted Graham.

On September 2, 2008, plaintiff sent a letter to Fralick complaining of the meeting. Fralick did not respond.  Soon thereafter plaintiff filed a formal grievance complaining of her teaching schedule.  In response, Fralick claimed that plaintiff's grievance "reflects considerable selfishness" but approved the resolution proposed by Ohio's principal.  The resolution did not address the lack of rest periods, which soon became problematic for plaintiff.  On October 27, 2008, Graham submitted a letter to Ohio's principal requesting that music classes return to the 30-minute length.  When the principal failed to respond, plaintiff wrote a letter to Fralick.  In a written response dated November 24, 2008, Fralick denied

plaintiff's request for a schedule change—without consulting her—because there was no "compelling justification" for a change.  Graham wrote additional letters to Fralick in January and March of 2009 but received no response.  On May 14, 2009, plaintiff sent a letter to the Board complaining of Fralick's treatment and requesting an interactive process to identify and implement reasonable accommodations.  Plaintiff never received a response to this letter.

On June 29, 2009, plaintiff served a notice of claim on the Board alleging employment discrimination.  Also in June 2009, Graham again asked Fralick for a teaching schedule that incorporated rest periods for the upcoming 2009–2010 school year.  However, the Assistant Superintendent for Instruction sent plaintiff a letter in July 2009 assigning her to a two-building schedule due to a decrease in student enrollment.[5]  Plaintiff immediately mailed letters to Fralick and Monaco opposing this new assignment.  Graham did not receive any response to her letters, and her assignment remained unchanged.  On September 25, 2009, plaintiff served another notice of claim on the Board.

During the 2009–2010 school year four music teachers received assignments that did not require daily travel between schools, and Fralick granted transfers to other teachers.  Moreover, Fralick cut the hours of a part-time music teacher, which necessitated Graham's daily travel to the second school to teach an extra class.  On December 28, 2009, plaintiff filed a charge of employment disability discrimination with the Equal Employment Opportunity Commission ("EEOC").  On March 30, 2010, plaintiff was issued a "Right to Sue" letter by the EEOC.

---

[5] District-wide student enrollment was 1773 and 1743 in 2008–2009 and 2009–2010, respectively.  Enrollment at Ohio dropped by 29 students.

As a result of conversations with District principals in March 2010, Fralick's announced cuts to the music program, and the District's history of failing to accommodate her needs, plaintiff feared that her assignment for the 2010–2011 school year would be physically unmanageable.  Fralick also announced incentives for any employee who retired by May 14, 2010.  These circumstances effectively left Graham without a choice, and she retired on May 12, 2010.

During these final three school years of her career, Graham was subjected to negative remarks and gossip by school staff concerning her disability and her reserved parking space.  Fralick did not schedule any workshops to sensitize staff about the challenges faced by disabled employees.  The District did not adopt a nondiscrimination policy for older and/or disabled employees, train its employees about employment discrimination, nor provide procedures for employees to request and implement accommodations.  Moreover, the District has a history of discriminating against disabled employees by assigning them to positions and duties without reasonable accommodations.

## III.  DISCUSSION

### A.  Judgment on the Pleadings—Legal Standard

The standard for granting a 12(c) judgment on the pleadings is "identical" to that of a 12(b)(6) motion to dismiss.  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations."

Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiff fails to provide some basis for the allegations that support the elements of her claims.  See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the complaint is to be construed liberally, the factual allegations are to be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Additionally, particular deference is to be given to a pro se litigant's complaint when applying the above standard.  Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

### B.  Documents Submitted by Defendants

Defendants have attached to their reply paperwork a copy of the September 13, 2007, letter from Monaco and the November 24, 2008, letter from Fralick.  Miller Decl., Exs. A & B, Dkt. No. 24.  Plaintiff has requested that these documents not be considered. However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  In her amended complaint plaintiff refers to and quotes from these letters.  See Am. Compl., Dkt. No. 10, ¶¶ 23, 31, 141–43, 151, 199j, 199m.

Plaintiff also incorporates the July 5, 2007, letter from her attorney to Fralick (Id. ¶¶ 15, 47e, 54, 57); letters from her doctors (Id. ¶¶ 54, 61h); the August 28, 2007, letter from attorney Miller to her attorney (Id. ¶¶ 62, 62a, 63, 77c, 144); a June 29, 2009, notice of claim she served on the Board (Id. ¶¶ 6–6a, 168, 200q); the District's response to her notice of claim (Id. ¶ 200r); her August 22, 2009, letter to attorney Miller (Id. ¶ 57i); and her September

25, 2009, notice of claim (Id. ¶ 7)—all of which are attached to defendants' motion to dismiss. Miller Decl., Exs. B–I, Dkt. No. 21.

Accordingly, all of these documents are deemed part of the amended complaint and will be considered.

## C.  Section 1981a Claim—First Cause of Action

Plaintiff's first cause of action alleges a violation of 42 U.S.C. § 1981a(a)(2). However, this statutory section does not provide an independent cause of action.  Javier v. Deringer-Ney, Inc., 578 F. Supp. 2d 368, 372 (D. Conn. 2008).  Instead, § 1981a(a)(2) enhances the remedies available to prevailing parties in certain actions, including some types of claims under the ADA and Rehabilitation Act.  Because at least some of plaintiff's ADA and Rehabilitation Act claims will survive this motion, as detailed below, Graham may recover under this statute if she ultimately prevails on these claims within the meaning of § 1981a(a)(2).  However, this claim is not a separate cause of action.

Accordingly, this first cause of action will be dismissed with the understanding that it will be subsumed under the remaining ADA and Rehabilitation Act claims.

## D.  Equal Protection Claim—Second Cause of Action

Defendants characterize plaintiff's equal protection claim as a "class-of-one" claim and maintain that it must be dismissed under Engquist v. Oregon Department of Agriculture. 553 U.S. 591, 605, 128 S. Ct. 2146, 2155 (2008) (holding that class-of-one claims are not actionable when based on discretionary decisions made in the public employment context). However, Graham's is not a class-of-one claim.  A class-of-one claim is one in which "plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'"  Id. at 601, 128 S. Ct. at 2153; see also Clubside,

Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.").

Although she was the only disabled teacher in the District, plaintiff does not claim to have been in a class of her own.  Instead, she clearly alleges that "[d]efendants intentionally discriminated against [her] on the basis of disability and/or on the basis of [her] membership in a class of people defined as disabled."  Am. Compl. ¶ 237a.  As such, plaintiff states a class-based equal protection claim, not a class-of-one claim.

To adequately allege a violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff must establish that she was treated differently than other teachers "as a result of intentional or purposeful discrimination."  See Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  Plaintiff must also show that this disparate treatment was not reasonably related to any legitimate government interest.  Id.  However, conclusory allegations of disparate treatment or plaintiff's personal opinion that such treatment was motivated by discriminatory intent is not enough to prevail on an equal protection claim.  Nash v. McGinnis, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

Graham fails to establish the requisite elements of an equal protection claim in her amended complaint.  Even assuming that she was disabled, other non-disabled teachers in the District had two-building assignments during the 2007–2008 and 2009–2010 school years.  Further, all teachers at Ohio had to contend with the extended class length during the 2008–2009 school year.  Therefore, plaintiff has not sufficiently alleged that she was treated differently than other teachers because of her disability.  Moreover, nothing in the amended complaint supports plaintiff's conclusory assertion that the alleged disparate treatment was

the result of purposeful discrimination on the part of the defendants.  While it may have been possible for the building assignments to be rearranged in order to accommodate Graham's requests, there is no indication that the failure to do so was motivated by intentional discrimination based on her disability.

Accordingly, plaintiff's equal protection claim will be dismissed.

### E.   Age Discrimination (ADEA)—Sixth Cause of Action

To establish a prima facie age discrimination claim under the ADEA, a plaintiff must show:  "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009).  Further, plaintiff must demonstrate that her age was a "but-for" cause of the adverse action.  Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S. Ct. 2343, 2350 (2009).  If plaintiff establishes a prima facie case of age discrimination, the burden shifts to defendants to "articulate some legitimate, nondiscriminatory reason for the adverse act."  Leibowitz, 584 F.3d at 498–99 (internal quotation marks and alterations omitted).  Defendants do not dispute that plaintiff is within a protected class[6] and was qualified for her position.  Instead, defendants assert that plaintiff did not suffer an adverse employment action giving rise to an inference of age discrimination.

A plaintiff suffers an adverse employment action if she "endures a materially adverse change in the terms and conditions of employment."  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  "To be materially adverse a change in working

---

[6] Although Graham does not reveal her actual age in her amended complaint, she began teaching in 1970 and claims to be over the threshold retirement age of 55.  Am. Compl. ¶¶ 8 ,14a.

conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotation marks omitted).  The Second Circuit has applied this definition broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (internal quotation marks omitted).  Lesser actions may also constitute adverse employment actions, such as "assignment of lunchroom duty, reduction of class preparation periods, . . . and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." Id. (internal quotation marks omitted).

The alleged adverse employment actions taken against Graham include her two-building assignments, the refusal to alter her schedule to provide rest periods, the denial of her requested transfers, and the threatened two-building assignment for the 2010–2011 school year.  Graham suggests that these actions were taken in an effort to encourage her to retire.  Even assuming, arguendo, that these constitute adverse employment actions, they do not give rise to an inference of age discrimination.  There is no indication that these actions would not have been taken but for plaintiff's age.  There are no factual allegations that the defendants ever discussed or considered plaintiff's age.  Similarly, there is nothing in the amended complaint on which to base an inference that defendants intended to force Graham into retirement due to her age.  Any allegations that defendants took adverse actions against plaintiff because of her age are wholly conclusory.

Accordingly, plaintiff's ADEA claim will be dismissed.

**F.   Timeliness of the ADA Claims—Seventh, Eighth, Ninth, Tenth, and Fourteenth Causes of Action**

Defendants argue that all of plaintiff's ADA causes of action must be dismissed as untimely.  The ADA requires that before an aggrieved employee can file a civil action, she must first file a complaint with the EEOC or the New York State Division of Human Rights within 300 days of the alleged discriminatory act.  See 42 U.S.C. § 2000e-5; 42 U.S.C. § 12117(a).  A plaintiff cannot base claims on time-barred "discrete acts" that are easily identified—such as termination, failure to promote, and denial of transfer.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002).  Indeed, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113, 122 S. Ct. 2072.

There is an exception that allows claims based on untimely discriminatory acts that were part of a continuing policy of discrimination.  "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."  Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004).  Further, this exception applies only where the discrimination is accomplished through specific policies or mechanisms, such as discriminatory seniority lists or employment tests.  Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993), abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp., ___ S. Ct. ___, 2011 WL 977061 (Mar. 22, 2011).

It is undisputed that Graham filed her EEOC complaint on December 28, 2009. Therefore, claims based on discrete acts of discrimination that occurred prior to March 3, 2009, are time-barred.  The acts that occurred before March 3, 2009, include plaintiff's

assignment to teach in two schools during the 2007–2008 school year and the subsequent denial of her requested transfer to a full time position at one school, and the last-minute extension of the class length during the 2008–2009 school year and the subsequent refusal to change her teaching schedule to allow for rest periods.  These constitute easily identifiable discrete acts of alleged discrimination.  Although Graham alleges that these acts evidenced a long-standing policy of discrimination in the District, such a charge is conclusory and insufficient to state a claim of a specific discriminatory policy or mechanism.  As such, the continuing violation exception is inapplicable to these facts.

Accordingly, the ADA claims related to acts occurring before March 3, 2009, will be dismissed.  Contrary to defendants' assertion, however, not all of plaintiff's claims relate to acts that occurred prior to March 3, 2009.  The claims concerning Graham's two-building assignment for the 2009–2010 school year, despite her request for a scheduling accommodation, are timely as plaintiff was made aware of this decision by letter in July 2009. See Am. Compl., ¶¶ 171–74.

### G.  Disability Discrimination (ADA)—Fourteenth Cause of Action

Although plaintiff titles her fourteenth cause of action "Discrimination on the Basis of Disability," she uses similar language as her tenth and eleventh causes of action, which allege failure to accommodate.  Liberally construing the pro se plaintiff's complaint, it is assumed that the fourteenth cause of action is a general disability discrimination claim under the ADA.

To establish a prima facie case of discrimination under the ADA, Graham must show:  (1) that the District is subject to the ADA; (2) that she is disabled within the meaning of the ADA or perceived to be so by the District; (3) that she was otherwise qualified to perform

the essential functions of her job with or without reasonable accommodation; and (4) that she suffered an adverse employment action because of her disability.  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).  Defendants do not dispute that the District is subject to the ADA or that Graham was otherwise qualified to perform the essential functions of her job.  Defendants instead assert that although they were aware of plaintiff's physical condition, such did not amount to a disability within the meaning of the ADA.  Defendants also argue that Graham did not suffer any adverse employment action.

### 1. Disability Under the ADA

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities . . .; or being regarded as having such an impairment."  42 U.S.C. §§ 12102(1)(A), (C).  This definition "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter."  Id. § 12102(4)(A).  An employee will be deemed disabled if the employer regards her as being disabled within the meaning of the ADA.  Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir. 2005).  Whether the employer regards the employee as disabled "turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability."  Id. (internal quotation marks omitted).

Graham claims that the August 28, 2007, letter from attorney Miller establishes that the District regarded her as being disabled within the meaning of the ADA.  This letter contains the following:

> In fact, recent case law suggests that although we would be required to assign Ms. Graham to a different position that was "vacant", there is no position that is presently vacant to which she could be appointed . . . .  We recognize that we have an obligation to accommodate Ms. Graham and

- 14 -

> that those accommodations include "job restructuring, part-time or modified
> work schedules and reassignment to a vacant position."

Miller Decl., Ex. D., Dkt. No. 21–3.  Miller then cited Jackan v. New York State Department of

Labor.  Id.  The Jackan Court considered whether an employer violated the ADA by refusing

to transfer the plaintiff, who could no longer perform the essential duties of his position due to

an alleged disability, to a less strenuous position.  Jackan v. N.Y. Dep't of Labor, 205 F.3d

562, 565–66 (2d Cir. 2000).  The Court concluded that the ADA mandates a transfer if the

plaintiff can show that a vacancy existed to which he could have been transferred.  Id. at 566.

By acknowledging that case law "required" the District to assign plaintiff to a vacant

position and imposed "an obligation to accommodate" her, the District evidenced a

perception that plaintiff was disabled within the meaning of the ADA.  Indeed, had the District

believed Graham was not disabled, such ADA obligations would not be triggered and the

requirements of Jackan would not apply.  Accordingly, plaintiff has sufficiently alleged that

she was regarded as being disabled for purposes of her ADA claim.

### 2. Adverse Employment Action

Graham alleges that her two-building assignment for the 2009–2010 school year

constituted an adverse employment action.  She claims that this assignment aggravated her

physical disability by requiring the lifting and carrying of supplies from one school to another,

necessitating excessive walking and exposure to inclement weather, and diminishing her rest

periods.  While this arguably fits within the broad application of the definition of adverse

employment action outlined above, plaintiff fails to allege any facts showing that she was

assigned to two buildings because of her disability.

As explained below, plaintiff alleges that this assignment was in retaliation for her opposition and complaints.  Further, the July 14, 2009, letter explained that her 2009–2010 school year assignment was due to a "decrease in enrollment."  Am. Compl. ¶ 174.  Later in her amended complaint, plaintiff asserts that the enrollment at Ohio, where she taught during the prior school year, did in fact decrease by 29 students.  Id. ¶ 179c.  Graham goes on to question the District's use of stimulus funds, its reduction of part-time music teachers, and its decision not to establish more kindergarten classes to reduce class size for the 2009–2010 school year.  While it may be true that the District could have used its resources differently, and thereby accommodated Graham, there are no factual allegations to indicate a causal connection between her physical disability and the 2009–2010 assignment.  The amended complaint only supports an inference that the two-building assignment was either in retaliation for plaintiff's complaints or due to changes in the composition of the District—and not because of her disability.

Accordingly, plaintiff's general ADA discrimination claim will be dismissed.

### H.  Failure to Accommodate (ADA and Rehabilitation Act)—Tenth and Eleventh Causes of Action

The ADA and Rehabilitation Act causes of action for failure to accommodate will be considered together as these acts, despite subtle differences in language, "impose identical requirements."  Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).  It is undisputed that the District receives federal funding, thus bringing it within the ambit of the Rehabilitation Act.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).  Moreover, claims under the Rehabilitation Act are not subject to the same 300-day limitation period as the ADA and ADEA claims.  See Harris v. City of New York, 186 F.3d 243, 247–48

(2d Cir. 1999) (noting that Rehabilitation Act claims are limited only by the same three-year statute of limitations as § 1983 claims).  Therefore, the Rehabilitation Act claims relating to conduct occurring before March 3, 2009, will be considered.

A defendant violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).  To establish a prima facie failure to accommodate claim, plaintiff must show:  (1) she is disabled within the meaning of the ADA; (2) her employer had notice of her disability; (3) she could perform the essential functions of her job with reasonable accommodation; and (4) her employer refused to make such accommodations.  Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).  Among the accommodations that an employee can request is a transfer to a vacant position that the employee is able to perform.  Jackan, 205 F.3d at 565–66.  Plaintiff has the burden of establishing the existence of such a vacancy.  Id. at 566.

As noted above, the District regarded Graham as being disabled within the meaning of the ADA.  Further, it is undisputed that the District knew of her physical limitations and that she could perform her job with reasonable accommodation.  Therefore, the only issue is whether the District refused to make such accommodation.  Throughout the three school years in question, Graham was permitted to limit her movement within the classroom as much as possible provided that she continue to meet curriculum requirements.  Plaintiff was also allowed to take rest periods as needed, request audio/visual aids, and use reserved parking spaces.  Plaintiff's claims are instead based on the District's refusal to grant her requested one-building assignment for the 2007–2008 and 2009–2010 school years, transfer

to a position with a one-building assignment during those school years, and restoration of class length from 35 minutes to 30 minutes during the 2008–2009 school year.

The denial of Graham's transfer requests cannot support a failure to accommodate claim because she did not identify a vacant position within the District to which she could have been transferred.  Indeed, Graham sought to swap positions with teachers who had preferable assignments, not to be transferred to fill a vacancy.  The ADA does not require an employer to disregard the entitlements of other employees in order to offer reasonable accommodations to a disabled employee.  See U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 405, 122 S. Ct. 1516, 1525 (2002); Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003).

Graham's claim related to the five extra minutes per class also will be dismissed as no rational juror could find such an accommodation reasonable.  The amended complaint indicates that the vast majority of teachers at Ohio favored the extended class length.  To grant her request to restore the length to 30 minutes would have upset the schedule of every teacher and student in the school on the first day of classes, thus imposing an undue hardship on the operation of the school.

However, plaintiff has sufficiently alleged that the District failed to provide reasonable accommodations when it refused to grant her requested one-building assignments at the beginning of the 2007–2008 and 2009–2010 school years.  At this early stage of the litigation, it is reasonable to infer that all teaching positions essentially are vacant before staff is assigned prior to the start of the school year.  Therefore, positions were available to which plaintiff could have been assigned.  This inference is supported by the fact that Graham was granted a one-building assignment during the 2008–2009 school year.

Graham claims that such an accommodation would have allowed her to perform the essential functions of her job by reducing the amount of lifting, carrying, walking, traveling, and exposure to inclement weather.  She also asserts that the possibility of another two-building assignment during the 2010–2011 school year factored heavily into her decision to retire.  See Am. Compl. ¶¶ 203–203a, 206.  Construing the complaint liberally and making all reasonable inferences in plaintiff's favor, she sufficiently alleges that continued two-building assignments prevented her from being able to perform the essential functions of her job and left her with no choice but to retire.

Accordingly, defendants' motion to dismiss the failure to accommodate claim will be denied as it relates to Graham's two-building assignments during the 2007–2008 and 2009–2010 school years.

## I. Retaliation (ADA)—Seventh, Eighth, and Ninth Causes of Action

Graham claims that her two-building assignment during the 2009–2010 school year was in retaliation for her opposition to the ongoing discrimination she faced.  Plaintiff also alleges that defendants attempted to coerce and intimidate her in an effort to discourage complaints and force her to retire.[7]  The ADA prohibits retaliation against, and intimidation of, persons seeking to exercise the statute's protections.  See 42 U.S.C. § 12203.  It is unlawful for an employer to discriminate against an employee who opposed an act that was prohibited by the ADA.  Id. § 12203(a).  The ADA also bars an employer from coercing, intimidating, or threatening a person's exercise of her rights under the ADA.  Id. § 12203(b).

---

[7] Plaintiff's seventh, eighth, and ninth causes of action all allege violations of § 12203 of the ADA based on the same facts.  These claims will be merged into one claim alleging retaliation and intimidation.

To establish a prima facie claim of retaliation in violation of the ADA, a plaintiff must show that: "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). "[A] a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." Id. at 720. If all four elements are met, defendants then have the burden to show a non-retaliatory reason for the adverse action. Id. at 721. Once such a showing is made, plaintiff must identify facts indicating that the defendants' rationale is pretextual. Id. Defendants argue that Graham's retaliation claim must be dismissed because she did not suffer an adverse employment action.

As explained above, the two-building assignment arguably constituted an adverse employment action as it aggravated plaintiff's physical disability and diminished her rest periods. Further, it is reasonable to infer that this adverse action discouraged Graham from making additional complaints or filing petitions for redress. Indeed, plaintiff alleges that she viewed such opposition as futile and elected to retire instead of actively pursuing redress when faced with another two-building assignment for the 2010–2011 school year.

Moreover, making all reasonable inferences in plaintiff's favor, Graham has sufficiently alleged that this assignment was the result of her opposition to scheduling and her numerous requests for accommodation. In January and March of 2009 Graham wrote letters to Fralick complaining of her teaching schedule but received no response. Am. Compl. ¶¶ 145–46. On May 14, 2009, plaintiff wrote a letter to the Board complaining of Fralick's treatment and requesting reasonable accommodations pursuant to the ADA. Id.

¶ 154.  On June 8, 2009, Graham requested a teaching schedule that incorporated rest periods for the upcoming 2009–2010 school year.  Id. ¶ 161.  On June 29, 2009, plaintiff served a notice of claim on the Board concerning employment discrimination and requesting specific accommodations.  Id. ¶ 168; Miller Decl., Ex. E, Dkt. No. 21–3.  On July 14, 2009, plaintiff received a two-building assignment by letter, which was backdated to July 1, 2009.  Am. Compl. ¶¶ 171–74.  This close temporal relationship creates a reasonable inference that the two-building assignment was in retaliation for plaintiff's complaints, requests for accommodation, and petitions for redress.  See Treglia, 313 F.3d at 721. (one month between protected activity and adverse action sufficiently established causation).

Accordingly, defendants' motion to dismiss the retaliation claim will be denied.

### J.   Due Process Claim—Thirteenth Cause of Action

Plaintiff claims that defendants violated her due process rights by failing to engage in an interactive process before refusing to provide certain reasonable accommodations mandated by the ADA.  Defendants argue that this claim must be dismissed pursuant to McBride v. BIC Consumer Products Manufacturing Co., in which the Second Circuit held that "an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA . . . unless [plaintiff] also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue."  583 F.3d 92, 101 (2d Cir. 2009).  Defendants' reliance on this case is misplaced.  First, Graham was qualified to be a music teacher and alleges that she would have been able to continue working had she been assigned to one building and provided with rest periods.  Second, McBride is clearly distinguishable because it involved a failure to accommodate claim under the ADA—not a due process claim as Graham asserts here.

Defendants also maintain that they attempted to engage in an interactive process with plaintiff, but she refused to comply with their demand for an oral examination.  As explained below, however, Graham was not obligated to submit to such an examination. Further, while an analysis of the actual nature and quality of any interactive process between the parties may be appropriate at the summary judgment phase, Graham's allegations that defendants failed to respond to her letters or consult with her at all before denying her requested accommodations are sufficient to survive this motion.

Accordingly, defendants' motion to dismiss the due process claim will be denied.

### K.  New York Human Rights Law—Third and Fourth Causes of Action[8]

The New York Human Rights Law ("NYHRL") prohibits an employer from discriminating against a disabled employee and mandates the provision of reasonable accommodations.  N.Y. EXEC. LAW §§ 296(a), 296(3)(a).  A disability discrimination claim for failure to accommodate under the NYHRL is governed by the same legal standards as an ADA claim.  Graves, 457 F.3d at 184 n.3.  Further, the definition of "disability" is more broad under the NYHRL than under the ADA.  McGowan v. HSBC Bank USA, N.A., 689 F. Supp. 2d 390, 401 (E.D.N.Y. 2010).  In theory, since plaintiff sufficiently pleaded failure to accommodate claims under the ADA, her related NYHRL claim also survives this motion. However, defendants assert that this claim must be dismissed because Graham failed to comply with an examination they demanded pursuant to General Municipal Law.  This argument fails because no such examination was required.

---

[8] In her fourth cause of action plaintiff seeks to state a claim under New York Compilation of Codes, Rules and Regulations section 466.11.  However, this provision merely defines "reasonable accommodation" for purposes of an NYHRL claim—it does not provide an independent cause of action.

General Municipal Law section 50-h states in pertinent part:  "Wherever a notice of claim is filed against a . . . school district . . . [the] school district shall have the right to demand an examination of the claimant."  N.Y. GEN. MUN. LAW § 50-h(1).  However, this provision applies to tort actions, not to discrimination claims brought under Executive Law section 296.  Gentile v. Town of Huntington, 288 F. Supp. 2d 316, 320 (E.D.N.Y. 2003); Lane-Weber v. Plainedge Union Free Sch. Dist., 213 A.D.2d 515, 516 (N.Y. App. Div. 2d Dep't 1995).  As Graham alleges an employment discrimination claim and not a tort claim, her refusal to submit to a section 50-h examination does not mandate dismissal.  However, the applicable statute of limitations impacts her claim.

The statute of limitations for a workplace discrimination claim against an officer of a school district or board of education is one year.  N.Y. EDUC. LAW § 3813(2-b); see also Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367, 369 (N.Y. 2007).  Moreover, no action can be brought unless a notice of claim has been served on the district's governing body "within three months after the accrual of such claim."  N.Y. EDUC. LAW § 3813(1). Graham filed this action on June 28, 2010.  Any NYHRL claim related to conduct occurring prior to June 28, 2009, is thus time-barred.  Graham served her first notice of claim on the Board on June 29, 2009, alleging that she was not provided with requested accommodations during the 2008–2009 school year and repeating her requests for the upcoming 2009–2010 school year.  Miller Decl., Ex. E, Dkt. No. 21–3.  As this notice involved events that occurred prior to June 28, 2009, any related claims are barred.  Graham filed a second notice of claim on September 25, 2009, alleging, inter alia, employment discrimination based on her two-building assignment for the 2009–2010 school year.  Miller Decl., Ex. I, Dkt. No. 21–3.  As Graham received this assignment by letter dated July 1, 2009, it is within both the three-

month time frame contemplated by Education Law section 3813 and the one-year statute of limitations.

Accordingly, defendants' motion to dismiss the NYHRL claim will be denied, but this cause of action is limited to claims related to plaintiff's 2009–2010 school year assignment.

### L.  New York Civil Rights Law—Fifth Cause of Action

New York Civil Rights Law ("NYCRL") prohibits discrimination based on, inter alia, disability.  N.Y. CIV. RIGHTS LAW § 40-c.  A valid cause of action brought under NYHRL subjects a defendant to civil penalties under section 40-c.  Illiano v. Mineola Union Free Sch. Dist., 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008).  As Graham's failure to accommodate claim under the NYHRL will survive the motion to dismiss, so too will her claim under section 40-c of the NYCRL.  Additionally, Graham claims to have satisfied the notice requirement of section 40-d by serving notice upon the state attorney general at or before the commencement of the action.  N.Y. CIV. RIGHTS LAW § 40-d; Am. Compl. ¶ 253.

### M.  New York Education Law—Twelfth Cause of Action

In her twelfth cause of action plaintiff alleges that Fralick failed to exercise his authority under section 2508 of the Education Law by refusing to transfer her to a one-building teaching position, even though such would have displaced another teacher.  As a threshold matter, it is not clear whether this provision allows for a separate cause of action as it merely establishes the powers and duties of a superintendent.  Regardless, this is essentially the same failure to accommodate claim as plaintiff brought under the ADA and NYHRL above.  Accordingly, it will be dismissed as redundant.

## IV.  **CONCLUSION**

In her amended complaint, plaintiff sufficiently alleges that the District regarded her as disabled within the meaning of the ADA, failed to provide reasonable accommodations, and retaliated against her for filing written complaints and serving a notice of claim. Moreover, at this early stage of the litigation, Graham has alleged a plausible due process claim.  The state law claims brought under the NYHRL also survive this motion as Graham was not required to comply with an oral examination as defendants assert.  As plaintiff sufficiently pleaded a NYHRL claim, her NYCRL claim remains as well.

Accordingly, it is

ORDERED that

1.  Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part;

2.  The defendant Watertown City School District Board of Education is merged into one defendant, Watertown City School District, and the title is amended accordingly;

3.  All ADA and Rehabilitation Act claims against defendant Terry N. Fralick are DISMISSED;

4.  The following claims are DISMISSED:  (1) the § 1981a claim (First Cause of Action); (2) the equal protection claim (Second Cause of Action); (3) the ADEA age discrimination claim (Sixth Cause of Action); (4) all ADA claims related to acts occurring before March 3, 2009 (referred to in the Seventh, Eighth, Ninth, and Tenth Causes of Action); (5) the general ADA disability discrimination claim (Fourteenth Cause of Action); and (6) the New York Education Law claim (Twelfth Cause of Action);

5.  The following claims are NOT DISMISSED:  (1) the ADA retaliation and failure to accommodate claims against the defendant Watertown City School District related to plaintiff's 2009–2010 school year assignment (referred to in the Seventh, Eighth, Ninth, and Tenth Causes of Action); (2) the Rehabilitation Act failure to accommodate claim against the defendant Watertown City School District (Eleventh Cause of Action); (3) the due process claim against all defendants (Thirteenth Cause of Action); (4) the New York Human Rights Law failure to accommodate claim against defendant Terry N. Fralick related to plaintiff's 2009–2010 school year assignment (Third and Fourth Causes of Action); and (5) the New York Civil Rights Law claim against defendant Terry N. Fralick (Fifth Cause of Action);

6.  The defendants shall file and serve an answer to the remaining claims on or before April 22, 2011.

IT IS SO ORDERED.

United States District Judge

Dated:   April 8, 2011
         Utica, New York.